IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL ACKAH : No. 4:08-CV-00376
      Plaintiff, :
       : Judge John E. Jones III
    v. :
       :
COMMONWEALTH OF :
PENNSYLVANIA DEPARTMENT OF :
CORRECTIONS, MICHAEL :
WENEROWICZ, JAMES HORNE, :
MICHAEL KAZOR, and TRACY :
SMITH. :
      Defendants. :

## MEMORANDUM

September 14, 2009

Plaintiff Daniel Ackah ("Plaintiff" or "Ackah") brings this employment

discrimination action against his former employer, Commonwealth of

Pennsylvania Department of Corrections, as well as Michael Wenerowicz, James

Horne, Michael Kazor, and Tracy Smith ("Defendants"), alleging violations of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*,

the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.*

("PHRA"), and equal protection under 42 U.S.C. § 1983 and § 1981, arising out of

alleged discrimination based on his race and national origin. Before the Court is

Defendants' Motion for Summary Judgment. (Doc. 25.) For the reasons that

follow, the motion will be granted in its entirety and the case dismissed..

## I.   PROCEDURAL HISTORY

Plaintiff filed the initial complaint in this action on February 27, 2008, and an amended complaint (Doc. 10) on June 3, 2008, purportedly addressing issues raised by Defendants' motion to dismiss (Doc. 8), filed on May 15, 2008. Defendants filed a subsequent motion to dismiss the amended complaint (Doc. 12), and that motion was granted in part and denied in part on November 14, 2009. (Doc. 21.) As to Ackah's surviving claims, Defendants filed the instant motion for summary judgment (Doc. 25), brief in support thereof (Doc. 26), and statement of facts (Doc. 27) on December 1, 2008. Plaintiff filed a brief (Doc. 38) and affidavit (Doc. 39) in opposition to the motion for summary judgment, and an answer to the statement of facts (Doc. 40), on January 26, 2009. Defendants filed their reply on February 6, 2009 (Doc. 41), and a supplemental reply on February 12, 2009. (Doc. 44.) Accordingly, this matter is ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). Nevertheless, the facts and all reasonable inferences drawn therefrom must be

viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III. BACKGROUND

In accordance with the standard of review governing motions for summary judgment, the following facts, and any reasonable inferences derived therefrom, are viewed in favor of the non-moving party, the Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because a non-moving party may not rely on unsupported allegations to prevent summary judgment, however, *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000), the Court has interpreted a fact in the Plaintiff's favor only where he has pointed to evidence beyond the pleadings that establishes at least a genuine dispute as to that fact.

Ackah is an African-American whose nation of origin is Ghana. (Doc. 10, ¶

4

1.) He has a Ph. D. in Sociology, a Master's Degree in Public Administration, and a Bachelor's Degree in Public Policy. (Doc. 39, ¶ 1.) Ackah took a civil service test in 2004 (Doc. 27, ¶ 3), subsequently interviewed with the Pennsylvania Department of Corrections ("DOC"), and began his employment with the DOC on May 23, 2005. (Doc. 39, ¶ 1.) Although Ackah interviewed for a Program Analyst position at a Grade 2, Level 7 pay-scale, he was offered and accepted a probationary position at a Grade 1, Level 6 pay-scale, with a promise he could interview for the higher level and grade. (Doc. 39, ¶ 2; Doc. 27 ¶ 6.)

Ackah alleges that Defendant Michael Kazor ("Kazor"), his immediate supervisor, refused to appropriately train him for his position. (Doc. 10, ¶ 10.) Kazor gave Ackah a negative performance evaluation at the end of his six-month probationary period, and informed Ackah he would be extending his probationary period for another sixty days. (Doc. 39, ¶¶ 6-8.) Ackah also alleges that Kazor told him he "could not communicate in writing and or verbally and that when [he] went to the institutions, [he] spoke with an accent and the staff over there could not understand [him]. . . ." (Doc. 39, ¶ 7.)

Ackah was then placed under the supervision of Defendant Tracy Smith ("Smith"). (Doc. 10, ¶ 11.) Ackah alleges that, after Smith took over as his supervisor, "[s]he was in the office only 10 percent of the time. . ." and that he

only met with her "four or five times for the whole period." (Doc. 39, ¶ 11.) Smith, Kazor, and Defendant James Horne ("Horne") once again recommended Ackah's probation be extended. (Doc. 10, ¶ 11.)

Defendant Michael Wenerowicz ("Wenerowicz") was, at all relevant times, a supervisor of Ackah and the director of the bureau in which Ackah was employed. (Doc. 10, ¶ 3.) Horne was also employed by the Department of Corrections. (Doc. 10, ¶ 15.)

Ackah alleges he was "denied training opportunities that were provided to similarly situated non-protected class employees," (Doc. 10, ¶ 11) , he was given no details as to why his probation was extended or as to why he was denied permanent civil-service protected status (Doc. 10, ¶ 12), and he was subjected to a pattern of harassing actions at the hands of the Defendants. (Doc. 10, ¶ 13.) Defendants, on the other hand, highlight a pattern of documented inadequacies relating to Ackah's performance. Specifically, at Ackah's three-month performance review his supervisor noted, among other issues, that Ackah consistently did not follow directions, exhibited intellectual dishonesty, was illogical in his presentations, and made inappropriate comments. (Doc. 27, ¶¶ 46-48; Doc. 40, ¶ 7.) Ackah's superiors made similar comments at his six-month review, and designated him as "needing improvement." (Doc. 27, ¶¶ 55-57; Doc.

40, ¶ 8.) Ackah consistently received grades of "needs improvement" through subsequent evaluations. A Pre-Disciplinary Conference was scheduled, at which Ackah's poor work results and other issues were addressed. (Doc. 27 ¶ 103; Doc. 40, ¶ 14.) Ultimately, Ackah did not adequately refute the charges made regarding his performance, and was terminated by the DOC on June 2, 2006. (Doc. 27, ¶¶ 108-09, Doc. 40, ¶ 14.)

Four claims survived dismissal pursuant to this Court's Memorandum and Order of November 14, 2008: (1) A Title VII claim against the DOC; (2) A PHRA "aiding and abetting" claim against all individual defendants in their personal capacities; (3) A § 1981 claim against Kazor, Smith, and Horne; and (4) A § 1983 claim against Kazor, Smith, and Horne.

## IV. DISCUSSION

Defendants assert summary judgment is appropriate on all of Ackah's claims because (1) the claims are barred because of settlement negotiations between Defendants and Ackah, (2) Ackah did not exhaust his administrative remedies, (3) the claims are time-barred, (4) the Defendants are protected by qualified immunity, and (5) Ackah has failed to meet the prima facie requirements of each claim.

The Court does not agree that the unsigned agreement pursuant to some

negotiation amounts to a final agreement to which the parties were bound.

Nevertheless, even assuming arguendo that Ackah timely exhausted his

administrative remedies and filed this action, and further assuming the Defendants

are not immune from suit, his claims still must necessarily fail because he is

unable to establish the prima facie requirements of any of them. Notably, Ackah

has relied exclusively on his own self-serving declaration as the only evidence put

forth to oppose summary judgment; however, this is insufficient to establish any

genuine issue of material fact. *See Blair v. Scott Specialty Gases*, 283 F.3d 595,

608 (3d Cir. 2002); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990) (stating that the object of Rule 56(e) "is not to replace conclusory

allegations of the complaint or answer with conclusory allegations of an

affidavit."). We will consider the remaining claims in turn.[1]

## A.    TITLE VII

Ackah asserts a Title VII claim against the DOC based upon negative

evaluations, denial of training and promotions, and termination. In a Title VII

---

[1]Because we will be disposing of this case in its entirety based on Ackah's failure to allege prima facie requirements, we need not address the Defendants' arguments regarding administrative exhaustion and qualified immunity. On the latter point, it is worth mentioning that, although Ackah is asserting violations of constitutionally-protected rights, the facts simply do not show the individuals violated those rights. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Accordingly, there is no need for a qualified-immunity analysis when no underlying constitutional violation has occurred.

action, the Court applies the "*McDonnell Douglas*" burden-shifting analysis. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). When alleging

discrimination, a plaintiff bears the initial burden of establishing by preponderance

of the evidence a prima facie case of discrimination. *Sarullo v. United States*

*Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The prima facie case of

employment discrimination requires a showing that:

> (1) the plaintiff belongs to a protected class; (2) he/she
> was qualified for the position; (3) he/she was subject to
> an adverse employment action despite being qualified;
> and (4) under circumstances that raise an inference of
> discriminatory action ...

*Id.*

When the plaintiff establishes a prima facie case, the burden then shifts to

the defendant to "articulate some legitimate, nondiscriminatory reason" for the

adverse employment action. *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at

802. If the defendant can meet that "relatively light" burden then the burden of

production returns to the plaintiff. *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir.

1994). "The plaintiff must then establish by a preponderance of the evidence that

the employer's proffered reasons were merely a pretext for discrimination."

*Sarullo*, 352 F.3d at 797 (citing *Tex. Dep't. Of Cmty. Affairs v. Burdine*, 450 U.S.

248, 255 (1981)). To survive establish pretext and survive summary judgment, a

9

plaintiff must, at least, "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employers action." *Simpson v. Kay Jewelers,* 142 F.3d 639, 644 (3d Cir. 1998) (citing *Fuentes,* 32 F.3d at 764. *See also Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108-09 (3d Cir. 1997) ("[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.")

## 1. Prima Facie Case

As an African-American from Ghana, Ackah has established that he is a member of a protected class. Ackah was academically qualified to perform his job, though the record shows that he in fact did not perform his duties satisfactorily. (Doc. 27, ¶¶ 33-107.) Ackah did suffer adverse employment action; namely the extensions to his probationary status and the eventual termination of his employment. But, for the reasons that follow, the circumstances under which he was denied promotion and finally terminated do not give rise to an inference of discrimination.

To support his claim, Ackah relates various comments made by his supervisors; for example, he claims to have been told on numerous occasions that he "spoke with an accent and the staff [at institutions] couldn't understand [him]." (Doc. 39, ¶ 7.) Ackah also claims the Defendants discriminated against him by calling him out of a meeting to respond to an issue that could have waited until after the meeting. (Doc. 39, ¶ 10.) "Crude and unprofessional" as the comments, if made, may be, without more they cannot give rise to an inference of discrimination. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 547 (3d Cir. 1992). *See also Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 359 (3d Cir. 1999). It is the "without more" that is lacking in this case, as insensitive remarks alone could not reasonably support a verdict in Ackah's favor. *Ezold*, 983 F.2d at 545-47. And, importantly, Ackah does nothing to support these allegations beyond his declarations. Even if these allegations were sufficient to support an inference of racial discrimination, without any evidence or support on the record, these bald assertions cannot withstand summary judgment. *See Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments are not evidence, *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985), and self-serving declarations parroting the allegations from the complaint are insufficient to demonstrate any factual dispute. *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990).

## 2. Legitimate, Nondiscriminatory Reason

Even assuming arguendo that Ackah can establish his prima facie case, the Defendants have offered a legitimate, nondiscriminatory reason for the adverse actions of which Ackah complains. As noted, Ackah consistently failed to perform his job to his supervisors' satisfaction. Before the DOC eventually terminated Ackah's employment, the Defendants granted him several performance reviews and probationary periods in lieu of termination. (Doc. 27, ¶¶ 46-107; Doc. 40, ¶¶ 7-14.) Poor performance by an employee is certainly a legitimate and nondiscriminatory reason to refuse to promote and eventually terminate that employee. There is ample detail in the record concerning the rationale for the adverse actions suffered by Ackah.

## 3. Pretext

Ackah has failed to point to any evidence from which a factfinder either could reasonably disbelieve that the adverse employment actions were because of Ackah's performance or could believe that discrimination against Ackah based on his race or national origin was likely the determinative cause of the actions. Ackah's conclusory, unsupported declarations of discrimination are insufficient to overcome the Defendants' offered reasons and establish pretext.

Because Ackah has not established the prima facie elements to satisfy Title VII, and beyond that has failed to establish pretext, summary judgment is appropriate on his Title VII claim.

## B.   PHRA "Aiding and Abetting"

Also surviving dismissal is an "aiding and abetting" claim asserted against all individual defendants under the PHRA. Ackah's PHRA claim is derivative of his Title VII claim: he contends that Wenerowicz, Kazor, Smith, and Horne "aided and abetted" the DOC in its discrimination against him. The PHRA requires the same elements of proof and the same burden-shifting analysis as Title VII. *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *see also Brown v. Hamot Med. Ctr.*, 323 Fed. Appx. 140, 142 (3d Cir. 2009). For the same reasons Ackah's Title VII claim fails, his PHRA claim also fails.

## C.   Section 1981

Ackah alleges a §1981 claim against Horne, Kazor, and Smith. To properly state a claim under § 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. . ." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Section 1981, too, requires

13

the *McDonnell Douglas* burden-shifting analysis. *See Miller v. Kindercare Learning Ctrs.*, 2009 U.S. App. LEXIS 16651, *4 (noting that the *McDonnell Douglas* framework applies to claims under Title VII, the PHRA, and § 1981); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."). Again, as Ackah's Title VII claim fails under the *McDonnell Douglas* framework, his § 1981 claim based on the same facts necessarily fails, as well.

## D.    Section 1983

"Plaintiffs bringing a § 1983 racial discrimination claim must make a showing similar to, but distinct from, the showing required for race discrimination claims brought under either § 1981 or Title VII." *Evans v. Port Auth. Trans-Hudson*, 2006 U.S. App. LEXIS 4349, *20. To bring successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove purposeful discrimination: he must demonstrate that he received treatment different from that received by similarly situated individuals. *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990), *overruled on other grounds*, (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986). Claims brought under § 1983 require the same elements of proof as Title VII actions. *See Lewis v. University of Pittsburgh*, 725

14

F.2d 910, 915 n. 5 (3d Cir. 1983).

Relevant to Ackah's § 1983 claim, he asserts he was "given no details as to the basis of Defendants' continuing to extend his probation, and failure to give him permanent civil service protected status, and no other similarly situated non-minority employees of the Department of Corrections were treated similarly." (Doc. 10, ¶ 12.) Ackah also declares "[w]hen [he] was terminated the next step ... was posting [his] pictures everywhere within the department of corrections ... which was never done to white employees who were terminated." (Doc. 39, ¶ 18.) Damning as these allegations may be, the record is bereft of any evidence to support them. These unsupported assertions, without more, are insufficient to establish a prima facie case and thus overcome a motion for summary judgment. *See generally Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

## V. CONCLUSION

Ackah has failed to meet his burden of producing evidence from which a factfinder reasonably could find that the Defendants' legitimate, non-discriminatory reasons did not actually motivate their employment actions. Importantly, Ackah has failed to establish sufficient evidence to support any reasonable inference that his poor performance evaluations, denial of promotion, and eventual termination were for legally cognizable discriminatory reasons rather

15

than for poor performance. Because Ackah has demonstrated no genuine issue of material fact regarding any of his claims, the Defendants' Motion for Summary Judgment will be granted and the case dismissed. An appropriate order will enter.